Good morning. Good afternoon, I think. May it please the Court, my name is Patrick Calhoun and I represent the plaintiff and appellant Gary King on behalf of his wife, Linda King. I'd like to reserve five minutes for rebuttal, if I may. Your Honors, the District Court incorrectly granted summary judgment for several reasons. The primary reason, in my opinion, is that the District Court held that the plan is ambiguous and that an average plan participant would not be alerted to the paragraphs on the lifetime limits that they do not apply to retiree Can we back up on something for a minute? There's this amendment that comes out and that's what you're arguing about. Is that part of the plan, part of the summary plan description or both? I think it's part of both, Your Honor, because it's included in the summary plan description and I believe that there's a notation on the bottom that indicates that... You're talking about a summary of material modifications? That's correct. Okay, that's different than the SPD. That's correct, but in this case the summary material modification is included within the booklet of the SPD. It's attached, right? It's attached. It's right. So why, as I understand it, the statutory standards that apply to SPDs, to summary plan descriptions, are fairly specific and are separate from the question of what the plan actually provides and what the plan administrator could decide that the plan provides. Are you arguing that the summary plan description, qua summary plan description, doesn't comply with the statutory and regulatory requirements? Am I arguing that the summary plan... Qua summary plan description, as such. I'm arguing that the summary material modifications, when taken along with the... that they're included within the book, that makes up the SPD. And I'm arguing that the way that the summary material modification is drafted makes the SPD completely ambiguous and unclear as to whether there is a lifetime limit for retiree plan participants. And if that's true, do we have to get to any question about the reasonable expectations doctrine or... what the plan actually means as opposed to whether the summary plan description is so confusing that it doesn't comply with the statute? I think the answer to your question is no. All right. And if we were to conclude that, what's the remedy and do you end up getting the money? How does that work? I hope so, Your Honor. Because, as I understand it, there are, you know, there's A1 and there's 3. And this then wouldn't be an A1 claim. It would have to be an A3 claim for violating the SPD. And then what do you... then what happens is you knock out the exclusion and therefore you get the money? Is that what happens? It seems like that, Your Honor, because if... Except it's not really an exclusion. As a reformation or something? I mean, in terms of what's the equitable relief that you're then getting? Well, the equitable relief that we're seeking is that Mrs. King be awarded the benefits that were wrongfully without. Getting benefits, you have to be under 1. If you are under 3, you have to get equitable relief. And I'm trying to figure out, and there's some discussion of this in the briefs, but there's a whole world out there, a Marissa confusion about relief. There seem to be cases like this, and it seems to be that what has... I'm just trying to figure out whether a violation of the SPD is independently sufficient for you to get as relief the actual money. I believe it is. And the reason is because the other cases that are similar, for example, Mergedichian, that case... Unpublished. Yes, but I was talking about the district court case. Not binding. Okay. Go ahead. Sure. In any event, in that case, because the plan violated, because the SPD did not clearly set forth when this person could apply for disability benefits, it was unenforceable. Okay, Counselor, can you break this down? Because I want you to be really specific, if you could, because this is one intricate document. So there's the SPD. Yes. And I don't understand you to be arguing that there was anything vague about it. There's the initial document, which said there's a lifetime cap for retirees. And then there's the 2010 SMM. Okay? And I think you're viewing those as one animal. Okay? But I'm looking at them separately. And it might matter, because even collectively, which is the way I think you're speaking of it, your position is that it was incomprehensible, that it was vague and... Right. But the case law that we've got talks about if an exclusion isn't fairly highlighted. Right. It can't be enforced. Right. Well, that's why it might matter that the SPD said, I think pretty clearly, there's a lifetime cap. Right. All right? And then in 2010, what they said is there's an announcement that under the Affordable Care Act, that's lifted, and then it's really tough, I think, I'll give you that, to follow around the columns that it says, oh, and by the way, this doesn't apply, this lifting of that restriction doesn't apply to retiree plans. Yes. Does that change? I don't think so, Your Honor, because we look at these plans from the perspective of an average plan participant. When an average plan participant picks up their SPD, they see the first thing they see are the summary material modifications. Now, you're explaining to me why you think it's vague. I understand why it's really tough to follow. Yes. But going back, I think, to Judge Berzon's question about what is the relief here, I don't think we have any case law that talks about you can't enforce an exclusion if it's sneaky and tough to find, right? Right. But your fact pattern is a little bit different because what I'll call the base policy, the SPD, I don't think is vague. I don't think that's your argument. Originally, in 2006, it said pretty clearly there's a lifetime cap. That's right. Okay. And so the ambiguity shows up later in 2010. Does it matter that it's not an exclusion but is actually a lifting of a restriction? I don't think so because what it does is it takes the exclusion, which arguably was clear in 2006. You mean the cap? Yes, the cap, which is an exclusion, I believe, in my opinion, because it limits the benefits that a plan participant is entitled to. And it takes an exclusion, exclusionary language that is arguably clear and completely muddies it up. The 2010 summary material modification makes it completely unclear, and these are in one document, a single document. But they're not. You have to read. Isn't it right? I don't mean to interrupt you. I know I keep doing that. Forgive me. But there's the summary plan description. I think I would have to read that. Don't I have to read every one of those annual SMMs in order to figure out what is or isn't? They're not cumulative, are they, as they go? I don't understand your question. In order to figure out whether I was covered or not, I think I have to read the SPD, which is the 2006 sort of base document, right? And then I have to read. What I'm thinking of is I think I referred to these as pocket parts with my law clerks. It turns out they don't know what that means anymore. But every year there's an annual SMM that came out, right? Right. And they're not cumulative. So wouldn't the plan participant have to read the 2006 document and whatever was issued in 2007 and 2008 and 2009 and 2010? No. No, Your Honor, because, as I said, it's one booklet. I've got it right here. Yes. And you're telling me the plan participant wouldn't have to read each of them to figure this out? Well, I think the plan participant would read through them, yes, and would have to see, would go. So here's my question, counsel. I don't think we're communicating. Yeah, I don't think so either. I'm sorry, Your Honor. Let me give one more run. I think it's kind of important. There's a 2006 SPD summary plan, right? And then there are annual, I'm going to call them updates, summary of material modifications, right? Yes. And there are several of those. Yes. But the 2010 summary of material modifications, as I understand it, doesn't include the summary of material modifications that came out the previous year. That's true. So I'd have to read each one of them to figure out what? Yes. Okay. Yes. But I don't understand. I don't believe that that makes a difference because I think that. It makes it a lot harder to figure out what your coverage is. It does do that. That's for sure, Your Honor. It does. But back to Judge Berzon's question, I think you were asking what the remedy would be. And I don't see how there could be any other remedy other than. Than enforceable. As Spenatek says, essentially, you would make the exclusion unenforceable. Absolutely. There is no other remedy. Do you agree that the ACA would have allowed them to do this if they had given it fair notice? Let me just say, it seems to me that it would, but do you want to take your best shot? Well, I'm not ready to concede the argument. I do believe that it's not my strongest argument. Well, tell me why. There may be something I'm missing about this because I was looking at it hard. But I guess the question is, when the PPACA in 42 U.S.C.A. 300 GG11 says, a group health plan and a group health insurance, orphan group, or individual health insurance coverage may not establish lifetime limits. What's the group health plan? Is there a definition? One thing we haven't seen is what's the definition of a group health plan for purposes of that statute? My understanding, Your Honor, is that it applies to all group health plans. All right. Well, if it does apply, that was my original understanding. If it applies to all group health plans, then why? I understand that the government has said in several different places that they don't understand this to apply to retiree plans, but they've also said they're not going to apply it to government plans and other plans. They're not going to apply it, which they agree it applies to. So when 29 U.S.C.A. 1185D says, to the extent that any provision of this part conflicts with a provision of such Part A with respect to group health plans, the provisions of such Part A shall apply, if Part A says it applies to all group health plans, then it conflicts with any exclusion of some group health plans. I agree with that. So I don't understand. I mean, this is an unusual statute because it says what happens. And the government's explanation seemed pretty gobbledygooky to me. I didn't understand what they were saying. I have to agree with you again, Your Honor. Well, then why is it a weak argument? Well, it's a complicated argument, and I do think there is some merit to it. I have to admit I am not an Affordable Care Act expert, and we're talking about the ‑‑ But a statute that may not exist anyway. Well, there is that also. Are you asking us to reach it? It doesn't seem to me that you need us to reach this question. I don't think I need you to reach it, but, as I said, I'm not ready to concede the argument. Well, it's sort of logically prior. I mean, it's kind of stupid for us to be spending all this time looking at whether this assertion in this plan that it doesn't ‑‑ it isn't covered when, in fact, it may be covered. Yes, that's true, Your Honor. But your argument is that regardless of that, even if they had the ability to do this, to retain the cap on the retirement plan, that it wasn't properly noticed. Absolutely, Your Honor. Under Section 1022, it was not properly noticed. Do you need the reasonable expectations doctrine to assist you in this area? I don't think so, Your Honor, because the case has set forth that those are two separate inquiries. You have the inquiry with regards to did it comply with the ERISA notice requirements, and then other cases, some cases, have gone on to apply the reasonable expectations doctrine. I think it can be applied in this case, but I do not think it's necessary. Thank you. Do you want to save some time for rebuttal? I will save some time for rebuttal. Okay, thank you. Thank you, Your Honor. We'll start from the other side. Good afternoon, Your Honors. Tim McDonald for United Parcel Service and the UPS Health and Welfare Package for Retired Employees. The argument for Healthcare Service Corporation will be by Ms. Ridley, and we've divided the time between ourselves. Let me first start out by addressing, because I've listened very carefully to your questions, Judge Christian. You obviously have some problems in your mind with the way this was written. I think it's really tough to read, counsel. Let me explain why it meets the statutory requirements. First of all, there's only one reading, if you really sit down and with a plain, fresh reading, there's only one reading that takes into account every symbol and every word in the SMM, only one reading, and that's the reading by the Claims Review Committee, and I can get through that in less than three minutes. I don't know that you need to. You convinced the district court the second time around, but the first time around the district court looked at this and saw what I'm describing. I mean, they're not bullet points. It's tough to, just formatting-wise, it's tough to appreciate that what is or is not part of one paragraph, that you have to read down one column of the next, and that's all the way over to the next page, that the elimination of lifetime maximum benefits is really intended to be part of that first subheading. I recognize your argument that the font is different. It is infinitesimally different. It's a tough argument. The font is the smallest difference. There are lots of really huge differences. Okay, what's your best shot? In other words, following changes in the first paragraph under health care reform, okay, under Mr. King's reading, there are no following changes. But wait a minute, wait a minute. It's not a change. That's the first problem you've got. This wasn't a change for the retiree plan. But, Your Honor, that's because there's an asterisk on health reform that says what I'm talking about now doesn't apply. So follow this. So it's a double negative. Excuse me? So it's a double negative. What it is saying is that this section, the health care reform section, does not apply to retirees. Everybody agrees that at least whatever belongs to the health care reform title does not apply to retirees. The only question then is... Right, but we have no idea. It could be, I mean, what you're claiming here, that we're supposed to know that something that's a page and a half later is part of this health care reform with the asterisk. And if I may, Your Honor, that's a great question, but in Scharf and in the state of Shockley, this court has said you look at the whole document before saying, well, it's a page and a half and it's after. You look at everything. And in Scharf, they said you have to read the whole section. So let's look at the whole section. Are we talking about summary of plan descriptions? Summary of material modifications. The same standard. No, the same standard doesn't apply. The summary of plan descriptions, I understand, is subject to particular clarity requirements, particularly with regard to exclusions. And it's not just a reading, but it's a reading that will have some ability to be understood by a lay person. By a reasonable plan participant. Right. You're right that there are different requirements. The site for what an SPD has to have, because it has more information, is in 29 CFR 2520.102-2. And then what there has to be for an SMM, because they understand, the Department of Labor understands, that's going to be dealing with a smaller subset of information, is under 29 CFR 2520.104-B3. What Judge Berzon's talking about, the proximity issues, we win on that hands down. Because in the SPD, to get back to Judge Kristen's point earlier, in 528 and 529, pages directly next to each other, it says, here's what you get for a retiree plan, and here's that big exclusion that you're talking about, Judge, on page 529 of the excerpt of record. That absolutely gets by. Nobody's argued that that isn't clear enough to meet the SPD regulation. His argument is about the 2010. Yes. And then when we get to that, if I may just please walk all the way through it, you'll see that their argument requires you to either add or subtract words to that document. And there is no case, and I will stand on that as an absolute, there is no case that says, when somebody's reading requires you to subtract or add words, that that means that my reading fails to meet the statute. Counsel, it's not just that. It's not just that. I mean, if you want to really engage with this and have an opportunity, it's really tough. Why would the average plan participant understand that these subsequent paragraphs in two columns are intended to all be tied to the heading that says health care reform with the asterisk? If I may, Your Honor, that's exactly what I want to get to. I'm waiting. We know from the first paragraph that there are the following changes that are in part of this health care reform section. And we know that the health care reform section does not apply to the retiree plan. So then the only question that we're faced with is, okay, what are the following changes? At the trial court, the plaintiff said, well, there isn't any because the next sentence doesn't have any changes. Well, that makes no sense, because it would read the words following changes right out of the SMM, and Scharf and a state of Shockley say you can't do that. So then let's look at what's next. The sentence before and after the ones with following changes talk about the acronym for the Health Care Reform Act, PPACA. This is really important, so watch what happens here. You then start to go down, and the only question is, how far down do you go? It's not some of the following changes. It's the following changes. Plaintiff only can create some confusion by changing that to some, but not all of the following changes. Well, but it's not all of them. Unless you are paying attention to the subtle differences in type, you'd think it was, where does it stop? Even without type, Your Honor, we win, and here's why. And if you notice on our brief on appeal, we were not relying on type. The district court was very interested in that. We were focused on the fact that when you see following changes and PPACA, watch what happens. After the first item, grandfather plan status, PPACA, then flip to the next page. The one after elimination of limitation lifetime maximum benefits, that has PPACA. So you know as you're reading through here that it's still talking about health care. And the relevant one doesn't have PPACA. Right, but Your Honor. So you might well think it stopped there. No. Because it doesn't have it. No, Your Honor, because it says the following changes, not some but not all of the following changes. So you know, because there's no modifier on following changes, you're looking for when that list will stop. When does it stop? It stops at the next major heading, mental health parity. Well, that's the question. It depends on somebody knowing that's the next major heading, and that's not so obvious. Please, Your Honor, we don't even have to win that to win. Because once you see, as this court has previously said in sharp, you have to read the whole document. Once you know that there's PPACA before and after that, you know it at least goes that far. Once you know that, we win. Now, there's a second reason. Let's back up a minute. If you really want to communicate this to people, you could have done a whole lot better. Can we at least joke around that? Right. And, Your Honor, this was a request by the union to put these two together as opposed to separate it, and UPS tried to accommodate the union. The union asked that you not number them? It's all the union's fault. The union asked that the retiree and the non-retiree provisions be put in the same document. Well, that's fine. You can put it in the same document, but you could still see what applies to one and what applies to the other, which you didn't do. Well, we did it with – You did an asterisk. Which was – You have to have – I mean, even seeing the asterisk is – You have to have a magnifying glass to catch that asterisk. Right. Which, if you go all the way back, was something that we had been using before, again, at that request. But the point is that – I'm sorry. That really is not a fair accusation. I mean, yes, you could put it all in one document and say things instead of relying on microscopic asterisks. Okay. But the point is that it's the combination of the asterisk, it's the combination of the word item, it's the combination of following changes, and then it's the combination of the fact that the PPACA is referenced in paragraphs before and after. Counsel. Let's back up a little to a little theory at this point. Is it – we will either agree or disagree with you with regard to the – whether this complies with the summary plan description. Yes, Your Honor. Is there any reason we have to get to this reasonable expectations issue? I don't think so, A, because we win on this language. But let me point out one other thing. The court in Moyle, this court said, to have a violation of these regs, there has to be causation and harm. The only statement in the record of what the kings looked at does not even say they ever reviewed these documents. Please look at excerpt of records 100 to 102. So what they're saying is, we never saw this. We never saw it. And if you don't see it under Moyle, which was decided before their reply brief, and I thought it was in their reply brief, but it wasn't, so we submitted the 28-J letter on it. It was after our brief closed. Moyle rejects a claim where an SPD was inaccurate because it said, well, nobody ever relied on it. So the SPD claim goes out the window, and the reasonable expectations doctrine should for the same reason. But even if it doesn't, you have a state of Shockley which says, that's limited to insurance plans. And there's great rationale for that because ERISA has a preemption provision and it has an exception for insurance plans. But as only ERISA could, it has an exception for the exception. So Congress drafted this one, not us. And it said, if it's a self-funded plan, you don't apply the law of insurance. That's why Shockley and other courts say, yeah, if it's an insured plan, fine. We apply reasonable expectations. But we don't apply it here. So we relied on Winters, right, and it misrepresented Winters? No. This Court, after Winters, said Winters only addressed the reasonable expectations and dicta. That, I believe, was in Sharpe. So and then Shockley says they never discussed the issue in Winters. Winters holds it, but nobody, there's no indication that that distinction was even briefed. Well, I'm not sure you're going to win this particular, and I don't mean that you need to, but it's sort of a cul-de-sac for you, this part. You're going to rely on Shockley, relying on Winters, which we know has got a problem. So could you go back to, I think you were not allowed to, we didn't give you an opportunity to finish one of the questions I had. You were talking back about the SMM. Yes. And you said that you win, you had a lot of reasons for that, that the health care reform, was it asterisk? Yes, Your Honor. That the ACA is mentioned before and after the paragraph we're talking about, not mentioned in the paragraph we're talking about. And then I said, where does it end? Where does this provision end? And you said the next major heading, which is mental health parity, I think, is what you answered. Correct. But how do I know that? Is it just font? It looks a whole lot like the heading above it and below it, and I wanted to give you a chance to respond. Well, there's also, yes, and then I'd like to also address Judge Berzon's question about the statute, because we haven't gotten to that yet. Yes, Your Honor. There's nothing after mental health parity that ever mentions PPACA, so those references are gone. No, my question is, how do I know that mental health parity is a major heading? Because it's larger letters than the ones below it, my point, and the subheadings above it. My point is, we don't even have to win that point. Once you get down to the fact that there are PPACA provisions on either side of the lifetime maximum, we win. On that point. Now, on the statutory point, you bring up a statutory structure that starts first, Judge Berzon, for us with 1191AA, and when I say AA, the first A is little and the second one is in parentheses. Okay. That says nothing in this part, and the part, of course, they don't tell you right there, you have to read it, starts at 1185 and ends at about 1193, nothing in this part shall apply to a health care plan that is for retirees except section 1185. All right? So we know when we read 1191AA that only 1185, which is mothers and newborns, the short answer to that one. Okay, but you're starting at a peculiar place because what we're trying to find out is whether the provisions of the PPACA apply, and apparently they apply, which includes this limitation on maximums, shall apply to group health plans. Is this a group health plan? This is an employer-sponsored group health plan, which is governed by a risk. It's a group health plan. Which is governed by a risk, yes. And health insurance issuers. Then it says to the extent that any provision of this part conflicts with a provision of such Part A with respect to group health plans or health insurance, providing health insurance, the provisions of such Part A should apply. All right? So Part A is saying, or this says that Part A applies to group health plans generally, and you're saying that a, and then it says, and if there's anything that conflicts with that, Part A applies. And now you're saying, but the exclusion isn't, doesn't contradict the notion that this applies to group health plans generally, but it does contradict. It doesn't, Your Honor, because we have to, when we get to the, and I completely understand your frustration with this statute. When you get to the doctrine of implied repeal, there has to be. This isn't implied anything. There's a very specific provision that says how these things interrelate. I understand, Your Honor, but it's not the provision that has to be expressed. It's the repeal that has to be expressed. And let me get to that point because I think I can show that it's implied. The way that the court, and this is the reason why this Supreme Court hasn't found a single implied repeal for over 40 years, and we listed on three pages a laundry list of statutes. Ordinarily, an implied repeal is there's a statute, and then there's a new statute. And the new statute could be read to contradict something in the old statute, but we're not going to do that unless we have a square conflict. Right. Right. But do you have any case in which there's a provision like A2 with regard to implied repeals which tells you how they interact? But, Your Honor, there's another provision which tells you how it interacts, and that's in ERISA, 1191AA. And watch this, Your Honor. When they put the reference to PPACA into ERISA, they put it in 1185D. Congress knew, because 1191AA already existed, if we want to accept it so that it applies to retiree plans, let's put it in 1185. Instead, they did not. They put it in 1185d. Then you get to this explanation by DHS, HHS, about why they came to the opposite conclusion, which I understand they did. But their explanation seems to run directly in the other direction until they get to their conclusion, because they point out that the earlier version did have the exception directly in the PHS Act, the same exception, as I understand it, for retiree plans. Is that right? I do not know, sitting right here, whether or not. I don't know either, except as I read it here, because what they say is that prior to the enactment of the Affordable Care Act, the PHS Act had a parallel provision, that is, parallel to 9831A, which I understood to mean an exclusion for retiree plans. Then it says, after the Affordable Care Act amended, reorganized, or renumbered, that exception no longer exists. So that would seem to lead to the conclusion that they didn't want the exception. Instead, they put this provision in saying if there is any conflict. And so they go on with that, and then they come to the conclusion that says the absence of an express provision in Part A does not create a conflict with the relevant requirements of ERISA. That's because ERISA has that separate 1191AA that takes care of it. Well, then why was the exception in the original PHS Act? Because that Act covers far more than employer plans. And so what they're basically saying, what Congress was saying is – No, what I'm – my understanding is what happened here was the original PHS Act covered far more than employer plans, but it had a specific exclusion itself for retiree plans. Then when they redid it in the PPACA, they took out the specific exclusion, and they put in this adjustment, how these two things fit together thing. So I don't – why did they take out the exclusion if they didn't mean it to go away? Well, the exclusion is not necessary because of where they put it in 1185D and the existence of 1191AA. So in other words, where they place it in ERISA makes that exclusion irrelevant. So then they don't have the exclusion as it relates to other plans that aren't governed by ERISA. And then the government goes on and says, well, there's no statement of intent that non-federal government retiree-only plans should be treated differently. So we're not going to – even though – even as to what is covered by this statute, we're not going to enforce it. Obviously, they just don't like this whole provision. All right? And, Your Honor, we take the law as it's applied to us. But 1191 – That's not exactly a law. That's just – we're not going to do it. I understand. But you have not a single case that's applied. I mean, you're talking about a change here that would wreak havoc on the remaining retiree health plans, which are already expiring. There's nobody out there other than a St. Louis University law review who thinks this applies to these folks. Well, I didn't read the St. Louis University law review. I don't know what's in there. I just read the statute, which I have a habit of doing. That's my point. You're exactly right. We have to read all the statutes. And we're now six years, seven years past this point. And it's been something that the agencies have remained in lockstep in, and no court has taken a different position. Has any court taken any position on this? I'm not aware of a case either way. Let me ask you, going back to the first argument, if we were to disagree with you on the planned disclosure issue, what happens? Are they entitled to a judgment in the district court or is there further proceedings? We still win because there's no link between the alleged deficiency and the alleged loss. That's what the Moyle case says. Would we then remand on that because there's been no determination on that? Well, no, they put their evidence in. They put in a sworn statement. Counsel, Mrs. King is dead. There's a letter where she says she was repeatedly reassured by a representative. She was apparently very diligent about getting preapproval for this very extensive procedure she would have. But we don't know what those conversations consisted of or what the diary entries might indicate from the claimed representative. So why isn't that a question of fact? If I may answer that in two parts, because, one, with respect to what was said by the reps, that's Ms. Ridley's argument, and so I don't want to step on her toes because those are the employees of Health Care Service Corporation. So I can answer the question for you with respect to the summary material modification and summary plan description. If they never read it and they put in a sworn statement, three pages, talking about what they believed, what they knew, and they never even mentioned reading these. You've made this point. Did you have a different point? Therefore, even if under Moyle the SMM is deficient, we still win because there's no causation and harm. So there would be nothing to send back because we would win on that alternate grounds with respect to the language of the SPD and the SMM. You know, I let you go way over. Does your colleague have? I haven't been sure. All right. She would be able to address Judge Kristen. Okay, let's make it quick. Good afternoon, Your Honors. My name is Eileen Ridley. I'm with Foley and Lerner representing Blue Cross and Blue Shield of Illinois, also referred to in instances as HCSC. So really the issues with regard to us really relates to the claim of that we were a fiduciary and that there was a breach. And you think under Kyle you're not a fiduciary? That's exactly right. I thought your representation of the holding of that case was pretty different than what the case says. I want to be very upfront with you about that and ask you to tell me what I'm missing. Well, Your Honor, I think that like MOYA, what we have here is HCSC basically being constrained by the plan terms, adjudicating the claim per the plan terms, which essentially is administrative activity, a ministerial determination. It is not one that is imbued with that kind of discretionary authority. So you're not claiming any discretionary authority to construe the plan terms? No. We have to follow the plan terms as the plan sponsors. Well, I understand that. But in general, there's a whole bunch of law about discretionary authority and the fact that quite aside from this particular provision, there's probably something in this plan that you apply that is not painfully obvious. Are you telling us that you haven't come into any case and said that we're fiduciaries and we should be deferred to? We hold no discretion whatsoever in the handling of this plan. In fact, that was also represented by one of the declarations we presented in the context of this motion. Does your client have the authority to grant, deny, or review claims? It reviews claims, applies the terms, and then informs the member of that determination based upon what the administrator has informed us of the terms. Does your client have the authority to grant or deny claims? They do. But that in and of itself is not categorically a statement of fiduciary duty. What about whether the plan covers a particular medical service? If you're talking about eligibility, we can talk about eligibility. No, I'm talking about this is Blue Cross. It's a medical plan, right? No. This is not an insurance policy. This is a plan sponsored by the employer. I understand it's sponsored by the employer. So what we do is we adjudicate the claim per the terms. In fact, the plan documents are quite clear that the ultimate and final determination is with the clinician. For example, we had a case the other day where the question was whether something was an emergency room service or wasn't an emergency room service, and we were told at great length that the determination by the plan administrator that this was not an emergency room service was due to we had to defer to that because it was, and frankly, if I were not deferring, I would have come to the conclusion that it was an emergency room service. So you don't have any problem like that anywhere in this plan. That is not what we have in this case. And, in fact, any appeal issue. I'm not talking about the case. I'm talking about the plan. You're saying you're not a fiduciary with regard to the plan. Same with the plan. If there's any issue with regard to how a claim is adjudicated, the ultimate decision with regard to coverage. The ultimate, but not the initial. Or the second. The ultimate. And, in fact, it's shown even by the King's Council wrote in June of 2013 to the plan administrator about the determination related to whether or not the limit applied. We don't determine what the terms are. We apply them. So this plan, for example, is deciding issues of medical necessity, for example, or medical, whether it's appropriate medical service. We identify when it is. It's not properly medical service. We say whether or not there's a medical necessity based on the plan terms, noting that is not a guarantee of payment, and noting that they would have to rely on the plan terms. We get the plan. We apply the plan terms to the claims. But that's not the way these things work. That doesn't seem to me to be a sensible argument. A sensible argument is we're not the ultimate decision maker, and I don't know whether that matters with regard to fiduciary necessarily. But because you are a decision maker along the way, unless somebody appeals you. But in cases like Kyle and Clausterman, the fact that you make a decision does not entail the fact that you're a fiduciary. You can be a TPA and not be a fiduciary. Do you have any other point you want to make? Other than that there were, in fact, no misrepresentations with regard to the allegations that King presented, no misrepresentations by HCSC to King with regard to the plan or the application of those terms to the claim. Okay. All right, thank you. Thank you. You had a minute or some time left. Just a couple of points, Your Honors. Counsel was referring to the paragraph that states the following changes, and I just want to point out that typically when you say the following changes, you end in a colon and then you state the following changes. This is interrupted by a sentence. Moreover, as this court pointed out, you can't tell the difference between the subheadings. He says that there isn't reliance, even if we disagree with him on the reading of this document. Right. On the notice issue he says that there wasn't reliance because nobody says they ever read the plan. No, I think there was reliance. I think the record reflects that there was reliance. Well, where exactly actually? I mean I looked at the declaration and there's a lot of talk about reliance on the telephone calls, but what about reliance on the summary plan description? Sure. I will say that we pled that there was reliance, number one. And secondly, that declaration, this issue didn't come up, so it wasn't something that we had to respond to in summary judgment. I can assure you. Well, this is important because was the summary judgment only on the basis that the plan and the summary plan description were sufficiently clear that they should get summary judgment? Did they ever argue this reliance question? They've never argued reliance. So they were looking for summary judgment on this going in issue and not on the question of reliance. That's correct. In fact, they never even argued in summary judgment, as I recall, that they never disputed that the plan was unclear. Is the discovery done, completed, so that, in other words, do you have discovery from the diaries from the claims administrators who were talking to Ms. King? Do we have the discovery from those folks who were talking to Ms. King? No, we do not. This was just a record review, right? That's correct, Your Honor. There was no discovery. There was no discovery. You didn't go to the district court and ask for discovery. No, we did not, Your Honor. We did not. But the record shows that she was in, I think, weekly contact with them, right? Weekly contact with Blue Cross. Right. Well, how could this be on the record? I mean, for reliance, you'd have to have litigated. I'm sorry, say that again? The issue of reliance, insofar as you're claiming that the summary plan description doesn't comply with the statute, that's not on an administrative record. No, it's not. It's a question of fact. And it hasn't been litigated yet, is that what you're saying? It has not, Your Honor. And I would also point out that the other cases that have found that, you know, provisions in a summary plan are unenforceable based on failure to comply with the notice requirements have never discussed reliance. I think it's an objective standard. I haven't seen anything. What's the case he's talking about, Moyle? I am not completely familiar with Moyle. I have to be honest. Counsel, it's different. There's a difference. Again, we're so far over time. But there's a difference between saying we haven't reached that question yet and taking the position that you think you don't have to show reliance on the plan document if the plan document was misleading, and I'm not sure which one you're telling us. Well, what I'm telling you is I don't recall in reading the cases there ever being a discussion. I'm not talking about that. I know what the cases say. I'm just asking you whether you're saying that in the district court that the case didn't advance to the point of litigating reliance versus you're telling me you think you don't have to show reliance. I'm telling you both, I think. I'm telling you that we didn't advance that far in the case to where reliance ever became something that was litigated. So one of the things that wasn't litigated is whether or not there was a reliance requirement. Right. If that's the case, that's easy. It's easy. Of course there was reliance. Of course there was reliance.  Anything else? Nothing, Your Honor. Thank you, counsel. Thank you. Thank you very much. Matter submitted. Thank you all very much. All rise.
judges: Paez, Berzon, Christen